### In re MURPHY.

(Supreme Court, Appellate Division, First Department. May 15, 1908.)

ELECTIONS—PRIMARY ELECTIONS—STATEMENT OF DELEGATES TO BE VOTED FOR —SUFFICIENCY.

Primary Election Law, Laws 1898, p. 341, c. 179, § 4, subd. 4, provides that at least 20 days before each official primary election day the chairman of the general committee of each party shall certify to the custodian of primary records a statement of the conventions, committees, and offices for which delegates, members, or candidates are to be elected thereat, and the number of delegates to conventions and members of committees to be elected in each unit of representation. Election Law, Laws 1896, p. 922, c. 909, § 53, provides that no person shall be entitled to vote at any primary unless he be qualified to vote for the officers to be nominated thereat on the day of election, and possess such other qualifications as shall be authorized by the regulations and usages of the political party holding the election. Primary Election Law, Laws 1898, p. 352, c. 179, § 10, provides that all delegates to every party convention in and for any political subdivision of a city shall be apportioned among units of representation, etc. Rules and Regulations of the Democratic Organization, art. 2, provides that the unit of representation to be observed in electing delegates to nominating conventions shall be the assembly district, and, where a portion of an assembly district is within the political division to which the convention is elected, such portion shall be deemed an assembly district for the purpose of representation. A statement filed by the chairman of the general committee of the Democratic organization showed the number of delegates to be elected in each assembly district, to the aldermanic district conventions, and that in one assembly district, which embraced three aldermanic districts, a specified number of delegates were to be elected to the several aldermanic conventions, the electors of the entire assembly district to participate in the election of all the delegates. *Held*, that the statement was not in compliance with the rules and regulations of the party, which contemplate that each aldermanic district in the assembly district shall be deemed an assembly district, nor with the statute, which limits the right of electors to participate in the election of delegates to conventions representing the election districts in which they are qualified voters.

Appeal from Special Term, New York County.

Application of Thomas H. Murphy to review the decision of the board of elections of the city of New York in the matter of an application of J. Carroll Edwards, to correct a statement of the committees, conventions, and offices for which delegates to conventions and members of committees were to be elected at a primary election, filed by the chairman of the general committee of the Democratic organization of New York county. From an order directing the board to publish

the call for the Democratic primary election in accordance with the statement, the board of elections and J. Carroll Edwards appeal. Reversed, and motion denied.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Terence Farley, for appellant board of elections.

Francis J. Kuerzi, for appellant Edwards.

Robert L. Luce, for respondent.

LAUGHLIN, J.  On the 3d day of September, 1907, the chairman of the general committee of the Democratic Party organization for the county of New York delivered to the board of elections of the city of New York, pursuant to the requirements of subdivision 4, § 4, of the primary election law (chapter 179, p. 341, Laws 1898, as amended), a statement of the committees, conventions, and offices for which delegates to conventions and members of committees were to be elected at the primary election to be held on the 24th day of September, 1907. This statement shows, among other things, that under the rules and regulations adopted by the organization filing the statement for conducting the primary election the unit of representation to be observed in the election of members of the county general committee and delegates to the several nominating conventions should be the assembly district, "except that, if an assembly district shall contain a part of a municipal court district or districts, it shall elect delegates to the municipal court convention or conventions, and, except that where an assembly district shall contain more than one aldermanic district, it shall elect delegates to each aldermanic convention as therein specified." It appears that the Thirty-Ninth, Fortieth, and Forty-First aldermanic districts are wholly embraced in the Thirty-Fifth assembly district. The statement so filed, under the heading: "Aldermanic District Conventions. The number of delegates to be elected in each assembly district to the aldermanic district convention shall be as follows"— shows that in the Thirty-Fifth assembly district 23 delegates were to be elected for the Thirty-Ninth aldermanic district convention, 28 delegates for the Fortieth aldermanic district convention, and 12 delegates for the Forty-First aldermanic district convention; and that the Democratic electors of the entire assembly district were to participate in the election of all of these delegates.  On the 6th day of September, 1907, the chairman of the board of elections addressed a letter to the chairman of the general committee of the Democratic organization, asserting the claim that the statement filed was incorrect, among other things, in that it appeared that some of the aldermanic conventions are made up of delegates from parts of assembly districts, but that the statement does not specify the election districts in each assembly district which are to be represented in the respective aldermanic conventions. The committee failed to file a corrected statement. On or about the 9th day of September, 1907, the appellant Edwards filed with the board of elections objections in writing to said statement, duly verified. The objection showed that he was a duly qualified elector, and duly enrolled as a Democrat in the First election district of the Thirty-Fifth as-

sembly district; that the assembly district embraced said three alder-manic districts, and that he resided in the Thirty-Ninth aldermanic district, which consisted of the First, Second, Twelfth, Thirteenth, Fourteenth, Fifteenth, Eighteenth, Nineteenth, Twenty-First, and Twenty-Second election districts of said assembly district; that in the statement filed the Thirty-Fifth assembly district is made the unit of representation for the purpose of electing delegates to the aldermanic conventions, and that the statement contemplates and provides that all of the Democratic electors in the entire assembly district shall par-ticipate in the election of the delegates to each of the three aldermanic district conventions, thereby enabling the Democratic electors in two of the aldermanic districts to control the election of delegates to nominate an alderman for the other aldermanic districts; that the statement does not conform to the statute in that each aldermanic district is a unit of representation and a political subdivision of the state from which delegates to the aldermanic convention should be chosen, and in that enrolled Democrats of the Fortieth and Forty-First aldermanic districts who constitute a majority of the enrolled Democrats of the Thirty-Fifth assembly district have under and through it the nomination and election of delegates to the aldermanic convention in the Thirty-Ninth aldermanic district and the control of the nomination for the alderman to be elected therein, although under the law they will not be permitted to vote for such nominee at the general election. Notice of a hearing on the objections was given by the board of elections to the general committee of the Democratic Party for the county of New York for the 10th day of September, 1907. At the hearing the objector and the general committee of the Demo-cratic Party were represented by counsel. The affidavits of Thomas H. Murphy and others were thereafter filed in behalf of the general committee of the Democratic Party, showing, among other things, that since 1901, when by statute the number of aldermanic districts was changed so that two or more districts or parts of districts fell within an assembly district, it has been the universal custom for the electors of the entire assembly district to vote a single blanket ballot containing the names of delegates to the several aldermanic district conventions, the whole or part of which aldermanic district was within the boundaries of the assembly district, without their right to do so being questioned, and that this has been the practice of Democratic electors for more than 20 years. The objections were thereafter sustained, and the chairman of the committee which filed the statement was duly notified of such rejection and requested to certify and file with the board a corrected statement. Thereupon the general committee of the Democratic Party applied to the Special Term, and an order was granted reversing the action of the board of elections, and sustaining said objections, and di-rected said board to publish the call for the Democratic primary elec-tion in accordance with the statement as filed.

Subdivision 4 of section 4 of the primary election law provides, among other things, as follows:

"At least twenty days before each official primary day, the chairman of the general committee of each party, subject to the provisions of this act, shall certify and deliver to the custodian of primary records a statement of the

conventions, committees and offices for which delegates, members or candi-
dates, as the case may be, are to be elected thereat, and the number of
delegates to conventions and members of committees to be elected in each
unit of representation.  *  *  * "

The section requires the custodian of primary records to give official
notice of the primary election, specifying location of each polling place,
and, among other things, the conventions to which they are to elect dele-
gates.  If the board of elections accepted said statement, they would
have been required to give notice that in every election district in the
assembly district delegates to all the aldermanic district conventions
were to be voted for by the Democratic electors.  Section 53 of the
election law (Laws 1896, p. 922, c. 909) defines the qualification of
voters at primary elections as follows:

"No person shall be entitled to vote at any primary unless he may be
qualified to vote for the officers to be nominated thereat on the day of
election.  They shall possess such other qualifications as shall be authorized
by the regulations and usages of the political party or independent body
holding the same."

The election law was enacted in 1896 (chapter 909, p. 896, Laws
1896), and the primary election law was not enacted until two years
later; but, if the Legislature in enacting the primary election law in-
tended that it should be complete in itself, it is reasonable to presume
that it would have repealed section 53 of the election law hereinbefore
quoted, or would have in express terms re-enacted a provision defining
the qualification of voters at primary elections.  Inasmuch as it did nei-
ther, it must be assumed that it was intended to let section 53 of the
election law remain in force.  Subdivision 3 of section 4 of the primary
election law provides, among other things, for the division, 30 days be-
fore a primary election, of every ward or assembly district in the city
"into primary districts, each of which shall consist of two contiguous
election districts, except in case there is an odd number of election dis-
tricts in said ward, assembly district or village, the highest numbered
election district shall be a primary district by itself."  This provision is
not controlling on the question now presented for decision, and has no
natural bearing thereon.  If delegates to a ward convention are to be
elected, I do not understand that it is necessary to join an odd district
of such ward to another election district in the assembly district to con-
stitute a primary district (subdivision 3, § 4, Primary Election Law),
and, even if any are required to be so joined, the ballots of the respec-
tive election districts are expressly required by law to be placed in sep-
arate boxes (sections 6, 7, Primary Election Law), even if they would
not in all cases be distinguishable by having the election districts print-
ed thereon (subdivision 1, § 7, Primary Election Law).  The statement
filed by the Democratic organization is in conflict with article 2 of the
rules and regulations of that organization relating to "Representation"
filed with the board of elections, which provides as follows:

"The unit of representation to be observed in the election of delegates
to the county general committee and to the several nominating conventions
shall be the assembly district and the annexed district.  Where a portion of an
assembly district is within the political division to which the committee or
convention is elected, such portion shall be deemed to be an assembly
district for the purpose of representation, and the rules and regulations ap-

plying to an assembly district, shall in all things apply to such portion
of an assembly district."

Subdivision 2 of section 9 of the primary election law provides as fol-
lows:

"The rules and regulations of parties and of the conventions thereof
shall not be contrary to or inconsistent with the provisions of this act or of
any other law, and shall not be amended except upon reasonable notice."

It does not appear that the rules as filed have been amended.

Section 10 of the primary election law provides that:

"All delegates to every party convention in and for any political sub-
division chosen in any city or village to which this act is applicable shall
be apportioned among units of representation in such city or village as
nearly as possible upon the basis of the number of votes cast therein for
the party candidate. for Governor at the last preceding general election,
except that in any county which is not wholly included within the boundaries
of a city of the first class, the general committee of the party may, by its
rules and regulations, continue any existing system of representation in
convention."

The practice of the Democratic Party, which it is claimed has existed
for more than 100 years, of having all the Democratic electors in an
assembly district participate in the selection of delegates to a district
convention to nominate officers to be voted for the ensuing election in
only part of the assembly district, is manifestly wrong. It is unneces-
sary to consider the statutory law as it existed prior to the adoption of
section 53 of the election law herein quoted. The Legislature has pre-
scribed as a test of the qualifications of a voter at a primary election that
he shall be eligible to vote for the officers to be nominated at the con-
vention to which delegates are to be elected. It is quite clear that this
limits the right of electors to participate in the election of delegates
to conventions representing the election districts in which they are
qualified voters. The construction for which the learned counsel for
the respondent contends would, as stated in the objections filed with the
board of elections, permit electors of the assembly district not residing
in the aldermanic district to control the nomination for the office of
alderman, although they could not vote for the nominee on election day.
Such a construction is opposed to the principles of our government,
and is contrary to the letter and spirit of the statute. It would seem
that article 2 of the rules and regulations of the Democratic Party
for the county of New York, filed with the board of elections, which
does not appear to have been amended in accordance with subdivision
2 of section 9 of the primary law herein quoted, conforms to the statute,
but that the statement filed for the primary election in 1907 does not.
Article 2 of the rules and regulations of the Democratic Party, as ap-
plied to the facts presented by the record, shows that each aldermanic
district in the Thirty-Fifth assembly ·district should be deemed an as-
sembly district for the purpose of representation, but the statement
filed does not conform to this rule. The statement is erroneous, in
that it should have provided that the unit of representation for the al-
dermanic conventions should be the aldermanic districts, and that the
Democratic electors in the respective aldermanic districts, the election
districts comprising which should have been set forth, should elect the

delegates to the respective aldermanic conventions. The notice for the election of delegates would, then, in conformity therewith, call upon the electors of the respective aldermanic districts to elect delegates to the respective aldermanic conventions. This construction of the law in no wise interferes with the management and control of the political affairs of the party, but secures to the electors thereof the rights conferred by the statute.

Although the primary election for which this statement was filed has been held, no objection in that regard is presented; but, on the contrary, we are asked to decide the question as one of public importance likely to frequently arise, and we do so for the guidance of the party and the board of elections in the future.

It follows that the order should be reversed and motion denied, but, inasmuch as costs are not demanded, without costs. All concur.